**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
INTERNATIONAL CODE COUNCIL, INC.,

                                         **24-MC-412 (DEH) (VF)**

                Petitioner,

                                         **OPINION AND ORDER**

         -against-

SKIDMORE, OWINGS & MERRILL, LLP,

                Respondent.
------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Presently before the Court is a motion by Petitioner International Code Council ("ICC") to enforce a subpoena against Respondent Skidmore, Owings & Merrill, LLP ("Skidmore") under Federal Rule of Civil Procedure 45. ECF No. 1. The subpoena seeks documents in connection with a copyright infringement and false advertising suit pending in this Court. For the reasons stated herein, the motion is **GRANTED**.

## BACKGROUND

      ICC is a not-for-profit corporation that develops and maintains building codes and standards known as the International Codes or I-Codes. ECF No. 2 at 2; ECF No. 3-4 at ¶ 3. ICC commenced the underlying action on August 17, 2017, against UpCodes, Inc., Garrett Reynolds, and Scott Reynolds (collectively, "Defendants"), alleging that Defendants' reproduction and display of ICC's building codes on its website infringed ICC's copyrights. See No. 17-CV-6261, ECF No. 1 at ¶¶ 27-30. On June 5, 2020, ICC commenced a separate action against Defendants for false advertising and unfair competition, alleging that Defendants sell building codes that contain ICC's copyrighted material and falsely claim that the building codes offered are accurate and complete. See No. 20-CV-4316, ECF No. 1 at ¶¶ 1, 28-31, 48. The two cases were consolidated on June 15, 2020. See No. 17-CV-6261, ECF No. 106.

On May 19, 2023, ICC served a Rule 45 subpoena on Skidmore, a non-party architecture and design firm that is a customer of Defendants. ECF Nos. 3-1, 3-2. The subpoena contains 20 Requests for Production, seeking documents regarding Skidmore's relationship with Defendants, Skidmore's use of Defendants' services, communications related to the accuracy and completeness of Defendants' building codes, and Skidmore's purchase of codes from third parties. ECF No. 3-1 at 9-11.[1] Skidmore, who is represented by the same counsel as Defendants, served objections and responses to ICC's subpoena on June 6, 2023. ECF No. 3-7. Skidmore objected to Request Nos. 2-6 and 11-20 as overly broad, unduly burdensome, and not proportional to the needs of the case insofar as those requests required Skidmore to "perform a search beyond an email query." ECF No. 3-7 at 5-8, 10-15; ECF No. 3-9 at 2. Similarly for Request Nos. 3-6, 11-13, and 20, Skidmore agreed to produce only "emails that substantively concern UpCodes." ECF No. 3-7 at 7; ECF No. 3-9 at 3. Skidmore also objected to Request No. 10, which sought documents regarding the purchase of codes from any third party, and refused to search for, or produce, any documents responsive to this request. ECF No. 3-7 at 9; ECF No. 3-9 at 3-4. Lastly, Skidmore objected to Request Nos. 1-6 and 11-20 "as calling for documents more appropriately obtained from Defendants to the extent they are discoverable." ECF No. 3-7 at 4-8, 10-15; ECF No. 3-9 at 2-3.

On September 5, 2023, Skidmore produced 219 pages of e-mail communications (52 e-mails) in response to the subpoena (see ECF No. 13-1 at ¶ 2), all of which, ICC claims, are e-

---

[1] Citations to "ECF" refer to documents on the electronic docket, and the page numbers referenced herein for documents on ECF are to the ECF-generated pagination in those documents. Citations to documents on the electronic docket for the underlying case are preceded by the case number for that case.

mails between Skidmore and UpCodes. ECF No. 15 at 12. Skidmore did not produce any non-email documents or any internal communications concerning Defendants. ECF No. 2 at 6; ECF No. 3-9 at 2; ECF No. 13 at 5.

On September 6, 2024, ICC filed the instant motion, seeking to enforce the Rule 45 subpoena. ECF No. 1. Skidmore filed its opposition on September 24, 2024, arguing that: (1) it had produced all responsive e-mails and "is not aware of other electronic or 'hard copy' documents"; (2) searching for non-email documents would impose an undue burden; (3) many of the documents ICC seeks are available from ICC itself or from Defendants; and (4) documents about Skidmore's purchase of building codes from third parties are not relevant to the underlying suit. ECF No. 13 at 7, 10, 12; ECF No. 13-2 at ¶ 3. ICC filed its reply brief on October 1, 2024, contending that the requested documents are highly relevant to the underlying litigation and that Skidmore has not demonstrated a specific undue burden if required to comply with the subpoena. ECF No. 15 at 5. The Court held a conference with the parties to address the motion on May 20, 2025. See ECF No. 17 ("Tr.").

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery subpoenas served on non-parties. DoorDash, Inc. v. City of New York, No. 21-CV-7564 (GHW) (GS), 2024 WL 4589891, at *3 (S.D.N.Y. Oct. 25, 2024). The purpose of Rule 45 is to protect non-parties "from being subjected to excessive discovery burdens in litigation in which they have little or no interest." Wultz v. Bank of China Ltd., 293 F.R.D. 677, 679 (S.D.N.Y. 2013) (quoting In re Edelman, 295 F.3d 171, 178 (2d Cir. 2002)); see also Novartis & Par Antitrust Litig., No. 18-CV-4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y. June 18, 2020) ("[I]n the case of subpoenas targeted at nonparties, [the

court] should be "particularly sensitive to weighing the probative value of the information sought against the burden of production to the nonparty.") (cleaned up).

Similar to discovery requests served upon parties, subpoenas directed to non-parties in accordance with Federal Rule of Civil Procedure 45 "are 'subject to the relevance requirement of Rule 26(b)(1).'" Malibu Media, LLC v. Doe, No. 15-CV-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) (quoting In re Refco Sec. Litig., 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011)); see also Malanga v. NYU Langone Med. Ctr., No. 14-CV-9681 (WHP), 2016 WL 7477561, at *1 (S.D.N.Y. Dec. 29, 2016) (quoting Palumbo v. Shulman, No. 97-CV-4314 (JGK) (KNF), 1998 WL 635534, at *2 (S.D.N.Y. Sept. 16, 1998)) ("The reach of a subpoena is 'tempered by the relevancy standard outlined in Rule 26(b)(1).'") (cleaned up). "Information is relevant and discoverable so long as the discovery 'appears reasonably calculated to lead to the discovery of admissible evidence.'" Velez v. City of New York, No. 04-CV-1775 (ENV) (MDG), 2010 WL 2265443, at *1 (E.D.N.Y. June 2, 2010) (quoting Fed. R. Civ. P. 26(b)(1)). "When broader discovery is sought, the Court should determine the scope "according to the reasonable needs of the action, . . . depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.'" Id. (quoting Fed. R. Civ. P. 26(b)(1)).

The party serving the Rule 45 subpoena carries the initial burden of establishing that the discovery sought is within the scope of Rule 26(b)(1). See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16-CV-1318 (GBD) (BCM), 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018). "If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden." In re Subpoena to Loeb & Loeb LLP, No. 19-MC-241 (PAE), 2019 WL 2428704, at *4 (S.D.N.Y.

June 11, 2019) (citing Griffith v. United States, No. M8-85 (JFK), 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)). "[A]ssessing undue burden" in the context of a Rule 45 subpoena is "a highly case specific inquiry" DoorDash, Inc., 2024 WL 4589891, at *15 (internal quotation marks and citation omitted), and "[t]he trial court has broad discretion to determine whether a subpoena imposes an undue burden." In re Subpoena to Loeb & Loeb LLP, 2019 WL 2428704, at *4 (citing Jones v. Hirschfeld, 219 F.R.D. 71, 74 (S.D.N.Y. 2003)). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." Id. (quoting Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-CV-1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).

When asserting a claim of undue burden, the objecting party "generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 262 F.R.D. 293, 300 (S.D.N.Y. 2009). "Because the burden is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." Kirschner v. Klemons, No. 99-CV-4828 (RCC), 2005 WL 1214330, *2 (S.D.N.Y. May 19, 2005) (internal citation omitted); see also Equal Emp. Opportunity Comm'n v. VisionPro Networks, Inc., No. 24-MC-356 (JMA) (JMW), 2024 WL 3643818, at *11 (E.D.N.Y. Aug. 2, 2024) (finding no undue burden where respondent argued "that it no longer maintains an infrastructure or employees" and "that many of the documents do not exist or have been since shredded" but did not submit "a breakdown of costs or time it would need to comply

5

with the subpoena" needed "in order for the court to fully assess" if compliance was unduly burdensome). The objecting party must show "specifically how, despite the broad and liberal construction afforded the federal discovery rules," each discovery request is burdensome by "submitting affidavits or offering evidence revealing the nature of the burden." Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 297 F.R.D. 99, 102 (S.D.N.Y. 2013) (internal quotation marks omitted); see Kirschner, 2005 WL 1214330, *3 (finding no undue burden where non-party did not provide an affidavit or any specific information regarding the nature of the burden and had already attended a deposition without similar objection). For example, an assertion that the entity does not have employees or the infrastructure to collect the documents, without a showing as to the "breakdown of costs or time" it would take to collect the documents, is insufficient to demonstrate that compliance would be unduly burdensome. See VisionPro Networks, Inc., 2024 WL 3643818, at *11.

## DISCUSSION

ICC seeks an order compelling Skidmore to search for and produce all non-privileged non-email documents responsive to ICC's Requests, without limiting its searches to e-mails. ECF No. 2 at 6. For ICC's Requests Nos. 2-6 and 11-20 requests, Skidmore had limited its search to e-mail communications. ECF No. 13 at 6-10; ECF No. 13-2 at ¶ 3.

As an initial matter, the documents sought by ICC's Requests Nos. 2-6 and 11-20 are relevant to the underlying suit. Requests Nos. 2-6 and 11-20 seek, for example, documents concerning advertising and marketing materials received from UpCodes; documents concerning whether the codes on UpCodes website are accurate; documents concerning Skidmore's use, licensing, and accessing of the codes purchased from UpCodes; documents regarding UpCodes' plans to reproduce or post any "I-Codes or Custom Codes" on the website; documents regarding

UpCodes' website; and communications with Defendants regarding ICC. ECF No. 3-7. Such information is plainly relevant to the scope of alleged infringement, commercial harm, and customer reliance in the underlying suit. See Cordova v. EmblemHealth, No. 22-CV-02933 (JHR), 2024 WL 1328380, at *2 (S.D.N.Y. Mar. 28, 2024) ("The relevance threshold in the discovery phase is quite low."). For example, documents concerning Skidmore's use and licensing of Defendants' codes are relevant to the scope of alleged infringement and potential commercial harm, as they may demonstrate how widely the allegedly infringing codes are being used. Further, communications about the accuracy of the codes on UpCodes' website support ICC's false advertising allegations by potentially showing that Defendants were aware of errors contained in the codes, despite advertising the codes as accurate and complete. Additionally, advertising materials and communications between UpCodes and Skidmore may show how Defendants' allegedly false statements influenced Skidmore's purchasing decisions.

The burden, therefore, shifts to Skidmore to show that searching for and producing non-e-mail documents responsive to these requests is unduly burdensome. See Capitol Recs., Inc. v. MP3tunes, LLC, 261 F.R.D. 44, 51 (S.D.N.Y. 2009) ("[T]he party resisting discovery must show that the material sought is 'not reasonably accessible because of undue burden or cost.'") (quoting Fed. R. Civ. P. 26(b)(2)(B)). In its response to the subpoena, Skidmore objected to Requests Nos. 2-6 and 11-20 as "overly broad, unduly burdensome, and not proportional to the needs of the case insofar as [the requests] requires [Skidmore] to perform a search beyond an email query." See, e.g., ECF No. 3-7 at Request No. 16. Of course, any objection that the requests are overly broad can be addressed through a narrowing of the requests, rather than an outright refusal to search for and produce responsive documents. See Burns v. Martuscello, 890 F.3d 77, 92 (2d Cir. 2018) (noting that a court may limit the scope of the subpoena if it is

overbroad); In re T-Sys. Scheiz AG, No. 20-MC-308 (GHW), 2020 WL 7384007, at *1-2 (S.D.N.Y. Dec. 16, 2020) (modifying and narrowing overly broad document request rather than "denying relief outright").

Turning to burden, Skidmore submitted a declaration from its General Counsel, Jeff Goldsmith, who states that Skidmore "is not aware of any other electronic or hard copy documents pertaining to UpCodes." ECF No. 13-2 at ¶ 3. Skidmore admitted during the conference on May 20 that it did not conduct a search for any non-email documents. Tr. at 5:22-25, 6:2-4. Instead, Skidmore states that it "is not aware of other electronic or hard copy documents pertaining to UpCodes." ECF No. 13 at 9; ECF No. 13-2 at ¶ 3. To the extent Skidmore believes a search for non-e-mail communications would produce no responsive documents (see ECF No. 13 at 6-8), the fact that a "search may be fruitless . . . does not excuse [Skidmore] from its obligation to conduct such a search" in the first instance. AIU Ins. Co. v. TIG Ins. Co., No. 07-CV-7052 (SHS) (HBP), 2008 WL 5062030, at *11 (S.D.N.Y. Nov. 25, 2008) (enforcing subpoena where the court found that the "search may be fruitless" but it did not excuse entity "from its obligation to conduct such a search").

To support its undue-burden claim, Mr. Goldsmith states in his declaration that Skidmore "organizes its electronically stored information (other than email) by individual project. In order to conduct a search for further documents, [Skidmore] would need to search each individual project folder, which is thousands of folders. [Skidmore] would also need to interview hundreds of employees regarding their use or non-use of UpCodes products and services." ECF No. 13-2 at ¶ 4. But Skidmore does not detail, either in terms of cost or man hours, the burden that such a search would impose on it. See e.g., N.L.R.B. v. AJD, Inc., No. 15-MC-326 (JFK), 2015 WL 7018351, at *4-5 (S.D.N.Y. Nov. 12, 2015) (finding no undue burden where respondents failed

8

to provide "specific evidence" of the cost of compliance and instead argued that production would be "astronomical" and enforcing the subpoenas would "seriously disrupt their business operations" by compelling them to "spend countless hours" pulling files); La Suisse, Societe d'Assurances Sur La Vie v. Kraus, 62 F. Supp. 3d 358, 367-68 (S.D.N.Y. 2014) (no undue burden where subpoenaed party's declaration included "conclusory assertions" and was "devoid of any specifics as to what steps he would have to take to comply with the subpoena and what their cost would be in either money or time"); see also Cris v. Fareri, No. 10-CV-1926 (RNC), 2011 WL 4433961, at *1 (D. Conn. Sept. 22, 2011) (finding no undue burden where defendant argued that it would be unduly burdensome to require him to produce files in more than one format but "submitted no affidavits or other evidentiary material describing the time, resources or costs that would be incurred in order to comply with the plaintiff's requests"). Skidmore is thus directed to search for and produce all non-privileged, non-e-mail documents responsive to ICC's Request Nos. 2-6 and 11-20.

ICC also seeks an order compelling Skidmore to search for and produce documents responsive to Request No. 10, which seeks documents related to its purchase of codes and standards from third parties. ECF No. 2 at 8; ECF No. 3-7 at 9. Skidmore argues that ICC has not taken reasonable steps to avoid imposing an undue burden or expense on Skidmore for Request No. 10, because the documents ICC seeks with respect to this request are either (1) not relevant, or (2) equally available to ICC or its licensees. ECF No. 13 at 11.

Beginning with relevance, the documents sought are relevant because, for example, if Skidmore purchased codes or amendments from third parties that were not available through UpCodes, that would support ICC's allegation that UpCodes' representations that it is the only source of such content is false. ECF No. 15 at 13. Additionally, whether Skidmore used

9

UpCodes as a substitute for ICC, an ICC licensee, or third-party codes is relevant to the fair use defense in the copyright infringement analysis, as well as to ICC's damages.

Turning to burden, Skidmore argues that documents responsive to Request No. 10 are equally available to ICC through its own records or by asking ICC's licensees. ECF No. 13 at 12. But at the May 20 conference, ICC confirmed that documents responsive to Request No. 10 are not within its possession and could not be obtained from UpCodes.[2] Tr. at 16:21-25, 17:2-13. Because Skidmore has not shown that ICC does have access to documents responsive to Request No. 10 and has not otherwise demonstrated that searching for and producing documents responsive to Request No. 10 is unduly burdensome, Skidmore is directed to respond to the request.

---

[2] For this reason, SEC v. Strauss, No. 09-CV-4150 (RMB) (HBP), 2009 WL 3459204, at *11 (S.D.N.Y. Oct. 28, 2009), relied on by Skidmore (see ECF No. 13 at 12), is distinguishable. In Strauss, the court concluded that all parties had access to the database from which the at-issue materials were sought. See id. Likewise, Schoolcraft v. N.Y.C., No. 10-CV-6005 (RWS), 2014 WL 1621480, at *9 (S.D.N.Y. Apr. 22, 2014), is inapposite, because the requesting party there had "not provided any information as to whether the information at issue is not reasonably obtainable from other available sources." Here, by contrast, ICC has represented that it has been unable to obtain the information it seeks in response to Request No. 10 from other sources. Tr. at 16:21-25, 17:2-13. As ICC asserts, it "does not have access to information regarding customers of its licensees[,] nor does it have the ability to discern whether Skidmore previously accessed the information via ICC's free reading room, from libraries, through resale of hard copy books, or from other sources not available to ICC, such as counterfeiters." ECF No. 15 at 13.

## **CONCLUSION**

For the foregoing reasons, ICC's motion to enforce the Rule 45 subpoena is **GRANTED**.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 1.

**SO ORDERED.**

DATED:   New York, New York
         July 15, 2025

　　　　　　　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　　　　VALERIE FIGUEREDO
　　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge